**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JACK WOLF, Individually and On Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. _____ |
| v. ) ) | JURY TRIAL DEMANDED |
| SHUTTERFLY, INC., RYAN O'HARA, ) THOMAS D. HUGHES, WILL LANSING, ) EVA MANOLIS, ANN MATHER, ) ELIZABETH RAFAEL, ELIZABETH ) SARTAIN, H. TAYLOE STANSBURY, ) BRIAN SWETTE, and MICHAEL ZEISSER, ) ) | CLASS ACTION |
| Defendants. ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on June 10, 2019 (the "Proposed Transaction"), pursuant to which Shutterfly, Inc. ("Shutterfly" or the "Company") will be acquired by affiliates of Apollo Global Management, LLC, Photo Holdings, LLC and Photo Holdings Merger Sub, Inc. (collectively, "Apollo").

2. On June 10, 2019, Shutterfly's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Apollo. Pursuant to the terms of the Merger Agreement, Shutterfly's stockholders will receive $51.00 in cash for each share of Shutterfly common stock they own.

3. On July 19, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Shutterfly common stock.

9. Defendant Shutterfly is a Delaware corporation and maintains its principal executive offices at 2800 Bridge Parkway, Redwood City, California 94065. Shutterfly's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "SFLY." Shutterfly

is a party to the Merger Agreement.

10. Defendant Ryan O'Hara is Chief Executive Officer, President, and a director of the Company.

11. Defendant Thomas D. Hughes is a director of the Company.

12. Defendant Will Lansing is Chairman of the Board of the Company.

13. Defendant Eva Manolis is a director of the Company.

14. Defendant Ann Mather is a director of the Company.

15. Defendant Elizabeth Rafael is a director of the Company.

16. Defendant Elizabeth Sartain is a director of the Company.

17. Defendant H. Tayloe Stansbury is a director of the Company.

18. Defendant Brian Swette is a director of the Company.

19. Defendant Michael Zeisser is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Shutterfly (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of June 7, 2019, there were approximately 34,299,839 shares of Shutterfly common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

28.     Shutterfly is a leading retailer and manufacturing platform for personalized products and communications.

29.     Founded in 1999, the Company has three divisions: Shutterfly Consumer, Lifetouch, and Shutterfly Business Solutions.

30. On June 10, 2019, Shuttefly's Board caused the Company to enter into the Merger Agreement with Apollo.

31. Pursuant to the terms of the Merger Agreement, Shutterfly's stockholders will receive $51.00 in cash for each share of Shutterfly common stock they own.

32. According to the press release announcing the Proposed Transaction:

Shutterfly, Inc. (Nasdaq: SFLY) ("Shutterfly" or the "Company"), a leading retailer and manufacturing platform dedicated to helping capture, preserve, and share life's important moments, today announced that it has entered into a definitive agreement with affiliates of certain funds (the "Apollo Funds") managed by affiliates of Apollo Global Management, LLC (together with its consolidated subsidiaries, "Apollo") (NYSE: APO), a leading global alternative investment manager, pursuant to which the Apollo Funds will acquire all the outstanding shares of Shutterfly for $51.00 per share in cash, or enterprise value of approximately $2.7 billion.

The $51.00 per share cash consideration represents a premium of 31% when compared to Shutterfly's unaffected closing stock price of $38.91 on April 23, 2019, the last trading day before a media report was published speculating that Apollo Funds were considering a bid for the Company. The Shutterfly Board of Directors unanimously approved the agreement with the Apollo Funds and recommends that Shutterfly stockholders vote in favor of the transaction. . . .

Transaction Details

The transaction is expected to close by early fourth quarter 2019. The transaction is subject to customary closing conditions, including approval by Shutterfly stockholders and receipt of clearance under the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

Upon completion of the transaction, Shutterfly will become a privately held company, and its shares will no longer be listed on the NASDAQ Global Select Market.

Advisors and Financing Providers

Morgan Stanley & Co. LLC is acting as financial advisor to Shutterfly, and Fenwick & West LLP is acting as its legal counsel.

Financing is being provided by Barclays, Citi and SunTrust Robinson Humphrey, Inc. (or a lending affiliate), who are also serving as financial advisors to the Apollo Funds. LionTree, UBS Investment Bank and Evercore are also serving as financial

advisors to the Apollo Funds. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal counsel to the Apollo Funds.

33. The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 4.4(a) and (b) of the Merger Agreement provide:

> (a) Immediately after the Agreement Date, subject to the other provisions of this Section 4.4, the Company shall, and shall cause its Subsidiaries and its and their respective directors, officers and employees, and shall instruct and use reasonable best efforts to cause its other Company Representatives to, cease and cause to be terminated any discussions or negotiations with any Person that may be ongoing with respect to an Acquisition Proposal, and shall immediately terminate "data room" access to such Persons. The Company shall promptly (and in any event within two Business Days of the Agreement Date) deliver a written notice to each such Person to the effect that the Company is ending all such solicitations, communications, activities, discussions or negotiations with such Person, effective on the Agreement Date, which written notice shall also instruct each Person to promptly return or destroy all non-public information previously furnished to such Person or any Company Representatives by or on behalf of the Company or any of its Subsidiaries. Without limiting the foregoing, it is agreed that any violation or breach of the restrictions or obligations set forth in this Section 4.4 by any Subsidiary of the Company or any Company Representative of the Company or any of its Subsidiaries acting on behalf of or at the direction of the Company or any of its Subsidiaries shall be deemed to be a breach of Section 4.4 by the Company.
>
> (b) Except as permitted by this Section 4.4, the Company agrees that it shall not, and shall cause its Subsidiaries and its and their respective directors, officers and employees not to, and the Company shall not authorize or instruct any Company Representatives to, and shall use its reasonable best efforts to cause any other Company Representative not to, directly or indirectly:
>
> (i) initiate, solicit or knowingly facilitate or encourage the making, submission or announcement of any Acquisition Proposal or Acquisition Inquiry or otherwise knowingly assist or participate in the making, submission or announcement of any Acquisition Proposal;
>
> (ii) engage in, participate or continue discussions or negotiations with any Person with respect to an Acquisition Proposal or Acquisition Inquiry (it being understood that the foregoing shall not prohibit the Company or the Company Representatives from making such Person aware of the restrictions of this Section 4.4 in response to the receipt of an Acquisition Proposal or Acquisition Inquiry or clarifying the

terms of any such Acquisition Proposal or Acquisition Inquiry);

(iii) enter into any merger agreement, letter of intent, term sheet, agreement in principle, memorandum of understanding, share purchase agreement, asset purchase agreement, share exchange agreement or other similar agreement constituting or relating to an Acquisition Proposal (other than an Acceptable Confidentiality Agreement) (an "Alternative Acquisition Agreement") or enter into any Contract or agreement requiring the Company to abandon, terminate or fail to consummate the Transactions;

(iv) terminate, waive, amend or modify any provision of, or grant permission under, any confidentiality agreement to which the Company or any of its Subsidiaries is a party and that contains a "standstill" provision;

(v) furnish to any Person (other than to Parent, Merger Sub or any designees of Parent or Merger Sub) any non-public information relating to the Company or any of its Subsidiaries or afford to any Person access to the business, properties, assets, books, records or other non-public information, or to any personnel, of the Company or any of its Subsidiaries (other than Parent, Merger Sub or any designees of Parent or Merger Sub), in any such case with the intent to induce the making, submission or announcement of, or to knowingly encourage, facilitate or assist, any Acquisition Proposal or Acquisition Inquiry;

(vi) take any action to make the provisions of any Takeover Law, or any restrictive provision of the Company Organization Documents inapplicable to any Acquisition Proposal or Person making an Acquisition Proposal; or

(vii) resolve or agree to take any of the foregoing actions.

34. Additionally, the Company must promptly advise Apollo of any proposals or inquiries received from other parties. Section 4.4(d) of the Merger Agreement states:

The Company shall promptly (and in any event within 48 hours) (i) provide Parent written notice of the receipt by the Company of any Acquisition Inquiries or Acquisition Proposals and the identity of the party making such inquiry or proposal (provided that the Company shall not be required to disclose the identity of the Person making such Acquisition Proposal if such disclosure is prohibited by the terms of a confidentiality agreement with such Person that is in effect on the Agreement Date), (ii) disclose to Parent the material terms of any such Acquisition Proposal, including a copy of all documents and communications received in connection therewith (including, for the avoidance of doubt, any form of agreement, letter of intent or agreement in principle in respect of the Acquisition Proposal) and (iii) provide or make available to Parent copies of all material written information concerning the Company or any of its Subsidiaries provided or made available by the Company, its Subsidiaries or any Company Representative to such

Person to the extent such written information was not previously provided or made available to Parent. The Company will keep Parent reasonably informed in all material respects of any material developments with respect to any such Acquisition Inquiry or Acquisition Proposal (and any subsequent amendments or modifications thereto), in each case, as soon as is reasonably practicable and in any event within 24 hours of receipt, provision or occurrence thereof. The Company shall, as soon as is reasonably practicable and in any event within 24 hours following a determination by the Company Board that an Acquisition Proposal is a Superior Proposal, notify Parent of such determination.

35. Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Apollo a "matching right" with respect to any "Superior Proposal" made to the Company. Section 4.4(f) of the Merger Agreement provides:

> Notwithstanding anything in this Agreement to the contrary, the Company Board may, prior to obtaining the Company Stockholder Approval, (x) effect a Change of Board Recommendation and/or (y) validly terminate this Agreement pursuant to Section 6.1(e), if (i) the Company receives a Qualifying Acquisition Proposal that the Company Board determines in good faith (after consultation with its financial advisor and outside legal counsel) is a Superior Proposal and (ii) the Company Board determines in good faith (after consultation with its outside legal counsel) that its failure to effect a Change of Board Recommendation or terminate this Agreement pursuant to Section 6.1(e) would be inconsistent with its fiduciary duties to the Company Stockholders under applicable Law; provided that the Company Board may not effect a Change of Board Recommendation pursuant to the foregoing clause (x) or terminate this Agreement pursuant to the foregoing clause (y) unless:
>
> (i) the Company has complied with this Section 4.4 with respect to such Qualifying Acquisition Proposal, other than de minimis breaches;
>
> (ii) the Company shall have provided prior written notice to Parent, at least three Business Days in advance (the "Superior Proposal Notice Period"), of its intention to effect such a Change of Board Recommendation (which notice itself shall not constitute a Change of Board Recommendation) or validly terminate this Agreement to enter into an Alternative Acquisition Agreement with respect to such Superior Proposal, which notice shall specify the material terms and conditions of such Superior Proposal and the identity of the Person or group making such Superior Proposal, and shall have contemporaneously provided a copy of the relevant proposed definitive transaction agreements with the Person making such Superior Proposal;

(iii) if requested by Parent, the Company shall have negotiated with, and shall have caused the Company Representatives to negotiate with, Parent in good faith during the Superior Proposal Notice Period in order to enable Parent to revise the terms of this Agreement in such a manner that would eliminate the need for taking such action (and in respect of a Superior Proposal, would cause such Superior Proposal to no longer constitute a Superior Proposal);

(iv) following the Company's and the Company Representative's negotiation in good faith with Parent during the Superior Proposal Notice Period and after considering the results of such negotiations and giving effect to any proposals, amendment or modifications made or agreed to by Parent, if any, the Company Board (after consultation with its financial advisor and outside legal counsel) shall have determined in good faith, that such Superior Proposal continues to constitute a Superior Proposal (it being understood and agreed that any change to the financial or other material terms of an Acquisition Proposal that was previously the subject of a notice hereunder shall require a new notice to Parent as provided above, but with respect to any such subsequent notices the Superior Proposal Notice Period shall be deemed to be two Business Days rather than three Business Days); and

(v) in the event of any termination of this Agreement in order to cause or permit the Company or any of its Subsidiaries to enter into an Alternative Acquisition Agreement with respect to such Acquisition Proposal, the Company will have validly terminated (or shall concurrently terminate) this Agreement in accordance with Section 6.1(e), including paying the Company Termination Fee in accordance with Section 6.3(a)(i).

36. The Merger Agreement also provides for a "termination fee" of $51.2 million payable by the Company to Apollo if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

37. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

38. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

39. First, the Proxy Statement omits material information regarding the Company's financial projections.

40. The Proxy Statement fails to disclose, for each set of projections: (i) all line items used to calculate Adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

41. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

42. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

43. With respect to Morgan Stanley's Public Trading Comparables Analysis, the Proxy Statement fails to disclose: (i) the "Street Case" projections; and (ii) the estimated outstanding shares of the Company's common stock on a fully diluted basis.

44. With respect to Morgan Stanley's Discounted Equity Value Analysis, the Proxy Statement fails to disclose: (i) Morgan Stanley's basis for applying the range of aggregate value to Adjusted EBITDA multiples and the range of stock price to free cash flow per share multiples used in the analysis; (ii) net debt; and (iii) the individual inputs and assumptions underlying the discount rate of 10.0%.

45. With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the individual inputs and assumptions underlying the discount rate ranging from 7.3% to 8.6% and the perpetual growth rates of 0% to 2% and (1%) to 1%; (ii) the terminal values; and (iii) the outstanding shares of the Company's common stock on a fully diluted basis.

46. With respect to Morgan Stanley's Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Morgan Stanley in the analysis.

47. With respect to Morgan Stanley's Premiums Paid Analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Morgan Stanley in the analysis; and (ii) the premiums paid in the transactions.

48. With respect to Morgan Stanley's Equity Research Analysts' Future Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Morgan Stanley in the analysis; and (ii) the sources thereof.

49. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

50. Third, the Proxy Statement omits material information regarding Morgan Stanley.

51. The Proxy Statement fails to disclose the timing and nature of the past services Morgan Stanley provided to the Company, Apollo, and their affiliates.

52. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

53. The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of our Board and Reasons for the Merger; (iii) Fairness Opinion of Morgan Stanley & Co. LLC; and (iv) Financial Projections.

54. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Shutterfly**

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Shutterfly is liable as the issuer of these statements.

57. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

58. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

59. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

60. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

61.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

62.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     The Individual Defendants acted as controlling persons of Shutterfly within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Shutterfly and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved

in the making of the Proxy Statement.

67.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

68.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 26, 2019                             **RIGRODSKY & LONG, P.A.**

                                                 By: */s/ Gina M. Serra*
                                                      Brian D. Long (#4347)
**OF COUNSEL:**                                       Gina M. Serra (#5387)
                                                      300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                                      Wilmington, DE 19801
Richard A. Maniskas                                   Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300                       Facsimile: (302) 654-7530
Berwyn, PA 19312                                      Email: bdl@rl-legal.com
Telephone: (484) 324-6800                             Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                                *Attorneys for Plaintiff*